UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION


FILED
DEC 18 2009

******************************************************************

| | | |
|---|---|---|
| MICKI A. TIBBETTS, | * | CIV 08-4197 |
| | * | |
| Plaintiff, | * | |
| | * | MEMORANDUM OPINION |
| vs. | * | AND ORDER RE: SUMMARY |
| | * | JUDGMENT |
| UNITED OF OMAHA LIFE | * | |
| INSURANCE COMPANY, | * | |
| | * | |
| Defendant. | * | |
| | * | |

******************************************************************

In her Amended Complaint Plaintiff Micki A. Tibbetts (Plaintiff) sets forth claims of breach of contract, equitable estoppel, promissory estoppel, and negligent misrepresentation with regard to a life insurance policy issued by Defendant, United of Omaha Life Ins. Co. (Defendant). Plaintiff is not now contending that the insurance contract should be enforced as written, but contends that Defendant should be estopped from enforcing a disability exclusion in the policy. Defendant has moved for summary judgment on all claims set forth in Plaintiff's Amended Complaint.

## FACTUAL BACKGROUND

After being previously employed by the School District as a speech therapist from approximately 1993 to 2007, Plaintiff Micki A. Tibbetts was rehired by Sioux Falls School District on January 23, 2008, as a speech therapist. Plaintiff's deceased husband, Frederick C. Tibbetts, had also previously been employed with the School District as a physical education teacher and girls' basketball coach from approximately 1993 to 2006. Mr. Tibbetts had resigned from the School District in August of 2006 after he was diagnosed with colon cancer. Plaintiff then resigned from her position with the School District to spend more time with her husband. Plaintiff testified that her husband considered working part time even after his diagnosis and only retired to ensure that Plaintiff could receive his retirement benefits immediately upon his death and not have to wait until she was 62. Also, although Mr. Tibbetts' cancer was considered terminal he had a clean PET scan

1

shortly before his wife applied for insurance and near the end of his life he regularly engaged in a variety of social activities. After retiring Mr. Tibbetts also worked as a crowd control person at the South Dakota Boys' Basketball Tournament.

Mr. Tibbetts' physician, Dr. Kepper, had stated that Mr. Tibbetts could not work and that his prognosis was poor and opined that Mr. Tibbetts had terminal cancer and that he would "never" return to work. In his May 23, 2007 application for Social Security Disability Income (SSDI) Mr. Tibbetts indicated that he had been "totally disabled" since July 30, 2006. Mr. Tibbetts qualified for SSDI. and was receiving the same at all relevant times.

Upon being rehired by the School District, Plaintiff met with Michelle McConnell, a benefits clerk for the School District, to discuss the School District's employee benefit package. Plaintiff admits she knew that McConnell was a School District employee. However, Plaintiff also testified that she knew that McConnell "signed people up for Mutual of Omaha life insurance" and that McConnell "had training . . . [and] that [Defendant] had worked with her to give her an understanding of the policy." Tibbetts also testified that she found it curious that in the other policies offered in the School District, such as AFLAC Insurance, the company's "actual agents come and talk with the school district employees."Plaintiff thought McConnell was representing United of Omaha. However, McConnell never informed Plaintiff that she was an employee or agent of United of Omaha. In addition, there is evidence in the record that two representatives from Defendant United of Omaha had met with employees of the school district, as well as had met with McConnell, the business manager and and the human resources manager and instructed them about the life insurance and the enrollment process. McConnell then enrolled employees.

When Plaintiff inquired about health insurance, McConnell askedPlaintiff if she would like life insurance on herself and on Mr. Tibbetts. Plaintiff asked McConnell if she could get life insurance on her husband and McConnell told Plaintiff that she could "as a new hire, you are entitled to life insurance on Fred, a guaranteed issuance, no medical exam necessary. [McConnell] said if you have 150,000, you can get 75,000 on [your husband]." McConnell admits informing Plaintiff that she could obtain guaranteed issued life insurance on her husband. McConnell testified that when United of Omaha replaced Madison Mutual Life in January of 2007 she met with a Jason Jodlowski, an employee of Mutual of Omaha. McConnell testified that she had the following

2

understanding based upon what had been told her by Jason Jodlowski, a Mutual of Omaha representative:

> My understanding is when we came on with Mutual of Omaha, that it was a guarantee issue up to a max of 200,000 for the employee and 75,000 for the spouse, providing the employee enrolls in a minimum of $150,000, that that was a guarantee issue, providing they filled out that Enrollment Form, signed it, dated it within that time frame that it was a guarantee issue at that point in time.

McConnell knew Plaintiff's husband was sick with colon cancer at the time of the January meeting. McConnell testified she has never worked for United of Omaha, and has not received any compensation from United of Omaha.

Plaintiff elected $150,000 of life insurance coverage for herself, primary dependent spouse life insurance coverage of $8,000, and optional spouse coverage of $75,000 for her husband, effective January 23, 2008. The Sioux Falls School District Employee Enrollment Form, which was received into evidence at the motions and pretrial hearing, documents Plaintiff's choice of benefits and states in part: "I understand my benefit choices will stay in effect providing I pay my premiums. I also understand that if I am waiving an insurance coverage, I may be required to furnish evidence of good health if I want to enroll." Plaintiff signed the Employee Enrollment Form on January 23, 2008. Plaintiff has not produced any evidence establishing that Defendant created the Enrollment Form or that it had any part in drafting the language contained in the Enrollment Form, but the Enrollment Form indicates that a pink copy of the form is provided to the Insurance Companies providing insurance to the school district employees.

On January 23, 2008, Defendant issued Policy No. GVTL-8G30 and GLUG-8G30 and premiums were deducted from Tibbetts' paycheck by the School District and remitted to United of Omaha for these policies.

The Group Voluntary Term Life Insurance Summary of Coverage states:

**Amounts of Insurance NOT in Excess of the Guaranteed Issue Limit**

If an Employer's properly completed and signed enrollment form for Dependent insurance is received on, before or within 31 days following the day the Employee becomes eligible, the Dependent will become insured on the later of:

3

the day the Employee becomes insured; or the date the enrollment form is properly completed and signed by the Employee; provided the Dependent is not confined or Disabled on that day.

Plaintiff received this Summary of Coverage the day she met with McConnell in January 2008.Plaintiff asked for, but McConnell was unable to provide the actual policy. The actual policy states:

> **For Amounts of Insurance NOT in excess of the Guarantee Issue Limit**
> If an employee's properly completed and signed enrollment form for Dependent insurance is received on, before or within 31 days following the day the Employee becomes eligible, the Dependent will become insured on the later of:
> (a) the day the Employee becomes insured; or
> (b) the date the enrollment form is properly completed and signed by the Employee; provided the Dependent is not confined or disabled (as described in the Confinement/Disability Rule) on that day.

The Confinement/Disability Rule states:

> Confinement/Disability Rule
> Insurance for a Dependent who is:
> (a) confined in a Hospital due to an Injury or Sickness;
> (b) confined in any institution or facility (other than a Hospital) due to an Injury or Sickness;
> (c) confined at home or elsewhere due to an Injury or Sickness and under the supervision of a Physician; or
> (d) Disabled either physically or mentally, to the extent of:
> > (1) being unable to perform all the usual and customary duties and activities (the "normal activities") of a person of the same age and sex, who is in good health; and (2) not being able to engage in any work or occupation for wages or profit;
>
> will not take effect in the case of paragraphs (a), (a) or (c) above, until such confinement ends and/or is no longer medically necessary, as determined by Us and/or an independent medical review arranged by Us, and in the case of paragraph (d) above, until the full resumption of all normal activities and/or return to active work.

Mr. Tibbetts passed away on February 17, 2008.Plaintiff made a timely claim to United of Omaha for payments under the group life insurance policy issued to the school district. At first the

4

claim was denied based on the confinement provision, but upon learning that Mr. Tibbetts was not confined, United of Omaha changed the basis of denial to the disability exclusion.

Subsequent to the motions and pretrial hearing Plaintiff has submitted E-mail correspondence between Mutual of Omaha employees and between McConnell and a Client Executive for Mutual of Omaha pertaining to another school district employee and insured and confusion regarding the application of the confinement/disability rule also at issue in the case at hand. Although Defendant's employee makes reference to a broker, and Plaintiff now maintains that the "broker" reference pertains to McConnell, the record is not clear on this point.

## DISCUSSION

Principles of Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 257; *City of Mt. Pleasant v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273-74 (8th Cir. 1988). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*

5

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

I

**WHETHER GENUINE ISSUE OF MATERIAL FACT EXIST AS TO WHETHER MCCONNELL WAS DEFENDANT'S AGENT UNDER AN ACTUAL OR OSTENSIBLE AGENCY THEORY TO SUPPORT PLAINTIFF'S CLAIMS FOR EQUITABLE ESTOPPEL, PROMISSORY ESTOPPEL, AND NEGLIGENT MISREPRESENTATION?**

Agency

Plaintiff's claims of equitable and promissory estoppel and negligent misrepresentation are all premised on Plaintiff's position that McConnell was Defendant's agent when she assisted Plaintiff in enrolling for life insurance for Plaintiff and Plaintiff's husband on January 23, 2008. Plaintiff alleges in her amended complaint that "McConnell was an agent of Defendant United of Omaha, and was acting within her actual, express, apparent, and/or implied authority." Defendant denies the existence of an agency relationship between it and McConnell.

Under the law of agency, a principal will be held liable for contracts made on its behalf by an agent if the agent was authorized to enter into the agreements. *Federal Land Bank of Omaha v. Sullivan*, 430 N.W.2d 700, 701 (S.D. 1988). Whether an agency relationship has in fact been created is a fact specific issue which depends upon the relations of the parties as they exist under their agreement or acts. *A.P. & Sons Const. v. Johnson*, 657 N.W.2d 292, 297 (S.D. 2003). When the existence of an agency relationship is denied, as it is in this case, the burden of proof is ultimately upon the party who alleges the existence of the agency relationship. *Kasselder v. Kapperman*, 316 N.W.2d 628, 630 (S.D.1982).

Agency may be either actual or ostensible. An "actual agency" exists when the principal and agent expressly agree to enter into agency relationship. *See* S.D.C.L. § 59-3-2.[1] The factual elements necessary to establish an actual agency relationship include: (1) manifestation by the principal that the agent shall act for him, (2) the agent's acceptance of the undertaking, and (3) the understanding

---

[1] S.D.C.L. § 59-3-2 provides: "Actual authority is such as a principal intentionally confers upon the agent, or intentionally or by want of ordinary care, allows the agent to believe himself to possess."

6

of the parties that the principal is to be in control of the undertaking. *Kasselder v. Kapperman*, 316 N.W.2d at 630. There is evidence in the record that McConnell received information and training from Defendant, and that McConnell communicated with Defendant regarding the conduct of Defendant's business. In addition, it can be reasonably inferred from the record that both Defendant and McConnell agreed that McConnell was the person with whom employees such as Plaintiff would contact and receive information regarding the life insurance policy in issue and that McConnell would play a significant part in the enrollment process of such employees. For the purpose of summary judgment, Plaintiff has established a genuine issue of material fact on the issue of actual agency.

Ostensible agency occurs "when by conduct or want of ordinary care the principal causes a third person to believe another, who is not actually appointed, to be his agent."S.D.C.L. § 59-1-5. A principal may also be bound by the acts of its agent under "ostensible authority, to those persons only who have in good faith, and without negligence, incurred a liability or parted with value upon the faith thereof." S.D.C.L. § 59-6-3 In reality, an ostensible agency is not deemed to be a true agency relationship. *See Federal Land Bank of Omaha*, 430 N.W.2d at 701. Instead, it is "based entirely on an estoppel." *Id.*; *American Prairie Construction Co. v. Hoich*, 560 F.3d 780, 793 (8th Cir. 2009). The South Dakota Supreme Court has explained:

> [W]here it appears that the principal knew, or by a proper supervision of the affairs of the agency ought to have known, of the acts of the agent, or the general course and manner in which he was conducting the business of the agency, he is estopped as against innocent third persons from denying the power of the agent to act.

*Baldwin v. National College*, 537 N.W.2d 14, 18 (S.D.1995) (quoting *Federal Land Bank of Omaha*, 430 N.W.2d at 701). "Ostensible agency for which a principal may be held liable must be traceable to the principal and cannot be established solely by the acts, declarations, or conduct of an agent." *Kasselder v. Kapperman*, 316 N.W.2d at 630.

"Once ostensible agency is determined, the principal is bound by the acts of his agent to only those persons who have 'in good faith, and without negligence, incurred a liability or parted with value upon the faith thereof.' " *Dahl v. Sittner*, 429 N.W.2d 458, 462 (S.D.1988) (quoting S.D.C. L. § 59-6-3). "The third person dealing with the agent, therefore, must show not only damages

resulting from his reliance on the appearance of authority, but also reasonable diligence and prudence in ascertaining the fact of the agency and the nature and extent of the agent's authority." *Id.*

Although Plaintiff admits she knew that McConnell was a School District employee, specifically, a benefits clerk, and although McConnell never informed Plaintiff that she was an employee or agent of United of Omaha, Plaintiff has also presented evidence of knowledge that Defendant trained McConnell, that McConnell was the person who signed up people for Defendant's insurance policy, and at least when Plaintiff was enrolling in the program, Defendant had no other representative meeting with Plaintiff. The fact that McConnell worked for the school district does not preclude her from also being an agent of Defendant. Although the summary of benefits contains the confinement/disability rule, the Enrollment Form provided to Plaintiff by McConnell and signed by Plaintiff is consistent with the advice Plaintiff received from McConnell. Viewing the evidence in the light most favorable to Plaintiff, Plaintiff has presented genuine issues of material fact with regard to ostensible agency and the absence of negligence on her part in ascertaining the existence and extent of McConnell's agency status.

Negligent Misrepresentation

Defendant contends in its brief in support of motion for summary judgment that any alleged statements made by McConnell are not actionable as they were merely representations as to future events. The cases cited by Defendant in support of this position are inapposite. A misrepresentation of the terms of an insurance contract with regard to coverage gives rise to a cause of action for negligent misrepresentation[2]. *See Moore v. Kluthe & Lane Insur. Agency, Inc.*, 89 S.D. 419, 234

---

[2]To establish negligent misrepresentation, a Plaintiff must prove:
1. The defendant supplied false information to the plaintiff;
2. The defendant supplied the information in the course of a transaction in which the defendant had a financial interest;
3. The defendant was negligent in obtaining or communicating the information;
4. The defendant supplied the information intending or knowing that the Plaintiff would rely on the information; and
5. The Plaintiff acted reasonably in relying on the information, to his or her detriment.

*Bayer v. PAL Newcomb Partners*, 643 N.W.2d 409 (S.D. 2002).

N.W.2d 260 (1975). The misrepresentations in the case at hand did not deal with future events but with entitlement to coverage under the terms of the life insurance policy.

Defendant argued at the motions and pretrial hearing and in briefing submitted subsequent to the hearing that Plaintiff had failed to establish any reliance damages and Defendant was therefore entitled to summary judgment on Plaintiff's negligent misrepresentation claim. Plaintiff relies on the following language in *O'Daniel v. Stroud NA*, 604 F.Supp.2d 1260, 1263 (D.S.D. 2008):

> The tort of negligent misrepresentation as articulated in Restatement (Second) of Torts § 552 has been cited with approval by the South Dakota Supreme Court. *See Meyer v. Santema*, 559 N.W.2d 251, 254 (S.D.1997) and *Pickering v. Pickering*, 434 N.W.2d 758, 762 (S.D.1989). The measure of damages for a negligent misrepresentation claim is set forth in Restatement (Second) of Torts § 552B and provides, in pertinent part, that "[t]he damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant." Comments (a) and (b) to § 552B specify that damages for negligent misrepresentation are determined by out-of-pocket loss or reliance damages. Because South Dakota follows the tort of negligent misrepresentation as set forth in the Restatement, this court believes that the South Dakota Supreme Court would also follow the provisions relating to damages for negligent misrepresentation as set forth in the Restatement.

The damages issue presented in the *O'Daniel* was whether the plaintiff was entitled to lost profits under a negligent misrepresentation cause of action. The district court in *O'Daniel* relied upon *Karas v. American Family Ins. Co.*, 33 F.3d 995 (8th Cir.1994), in which the Eighth Circuit, in applying South Dakota law, determined that the record did not support recovery of damages for mental suffering in an action based upon an insurance agent's negligent misrepresentations about the extent of coverage in the plaintiff's health insurance policy. While it is correct that the Eighth Circuit in *Karas* referenced the Restatement (Second) of Torts § 552B, 33 F.3d at 999, the Eighth Circuit clearly held "the claim for misrepresentation would allow the plaintiff to secure the coverage she thought she had received for the surgical procedure." 33 F.3d at 1001. Plaintiff has presented evidence that she believed she had received guaranteed coverage of $75,00 in life insurance on her husband's life. Defendant's motion for summary judgment based on the failure to establish damages on the negligent misrepresentation claim is denied.

Accordingly,

9

IT IS ORDERED that Defendant's Motion for Summary Judgment (Doc. 30 )is denied.

Dated this 18th day of December, 2009.

BY THE COURT:

/s/ Lawrence L. Piersol
Lawrence L. Piersol
Unites States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: Colleen Schulte
(SEAL)     DEPUTY